IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 13-03041-01/02-CR-SJ-DGK |
| BRUCE CONANT and | ) | |
| RENDY CONANT, | ) | |
| | ) | |
| Defendants. | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On March 11, 2014, this case was recommitted to me for further clarification. Based on the following I continue to find that defendants have failed to establish that the false information was provided deliberately or with reckless disregard for the truth.

## I. BACKGROUND

On May 8, 2013, an indictment was returned charging both defendants with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. The indictment also charges defendant Bruce Conant with possessing a firearm in furtherance of a drug trafficking crime and possessing a firearm after having been convicted of a felony.

On August 26, 2013, Rendy Conant filed a motion to suppress (document number 39), a motion for a Franks hearing (document number 40), and a motion for en camera inspection of the Waynesville City Police files. On September 5, 2013, Rendy Conant filed Suggestions in Support of her motion for a Franks hearing (document number 48) and Suggestions in Support of her motion to suppress (document number 49). On that same day Bruce

Conant filed a motion to suppress evidence seized from his residence (document number 47) and a motion to suppress evidence seized from his storage unit (document number 46). On September 10, 2014, Rendy Conant filed an amended motion to suppress (document number 52) and an amended motion for Franks hearing (document number 53). On October 15, 2013, the government filed a response to all of the preceding motions. On October 29, 2013, this case was transferred to me for processing.

After the case was transferred to me, Rendy Conant filed a motion for an order directing the government to produce the "totality of the information" supplied to Judge Storie for the issuance of the search warrant for defendants' home (document number 61). On November 11, 2013, Bruce Conant filed a motion to join in the motions for Franks hearing which had been filed by Rendy Conant (document number 62). On November 13, 2013, Bruce Conant filed a reply to the government's response to Bruce Conant's motions to suppress (document number 63). On November 18, 2013, Rendy Conant filed a reply (document number 65). On November 22, 2013, a hearing was set for January 28 and 29, 2014.[1]

On January 14, 2014, Rendy Conant filed a motion for an order requiring the government to reveal the identity and address

_____

[1]Because the hearing was to be held in Springfield where courtrooms are shared by judges coming in from Kansas City, the hearing on the motions to suppress evidence was set prior to my consideration of the Franks issue which was not mentioned in the order setting suppression hearing (document number 67).

of confidential informant ("CI") 2011-12-2 (document number 68). By January 21, 2014, the government had not filed response to the motion for identity of the CI and I entered an order directing that one be filed by January 23, 2014 (document number 70).  On January 23, 2014, the government filed a response objecting to disclosure of the CI (document number 71).

On January 25, 2014, I entered an order granting Bruce Conant's motion to join in Rendy Conant's <u>Franks</u> motions (62), denying the motion for "totality of information" (61) since the production of discovery was already covered in the Scheduling Order entered on May 28, 2013, by Judge England; and denying the motion for disclosure of informant's identity (62) based on the government's privilege (document number 72).  On January 25, 2014, I entered an order denying Rendy Conant's motion for <u>Franks</u> hearing (40); denying Rendy Conant's motion for en camera inspection (41); and denying the amended motion for <u>Franks</u> hearing (53) (document number 73).  I found that defendants had failed to satisfy their burden of showing an intentional or reckless (a) inclusion of false information or (b) omission of information material to the determination of probable cause.

> An evidentiary hearing is not warranted unless the defendant makes a strong initial showing of "deliberate falsehood or of reckless disregard for the truth." <u>Franks v. Delaware</u>, 438 U.S. at 171; <u>United States v. Freeman</u>, 625 F.3d 1049, 1052 (8th Cir. 2010).

(document number 73, p. 6).  Because defendants did not offer any proof that the alleged omissions about the CI were deliberate or reckless other than to state that the officer was experienced, I

found that this essential prong of the <u>Franks</u> analysis which would entitle defendants to a hearing had not been met.

An evidentiary hearing on the motions to suppress was held on January 28, 2014.  The following day, Rendy Conant filed a motion to supplement the motion for <u>Franks</u> hearing with the transcript of the January 28, 2014, hearing (document number 75). A transcript of the suppression hearing was filed on January 30, 2014 (document number 76).

On February 10, 2014, I filed a Report and Recommendation ("R&R")to deny Bruce Conant's motions to suppress (46) (47) (document number 77) and a Report and Recommendation to deny Rendy Conant's motions to suppress (39) (52) (document number 78).  In those R&Rs, I found that "[t]he issue of probable cause need not be addressed because I find that the good-faith exception to the exclusionary rule applies here."  When discussing the exceptions to the good-faith exception, I found that "[t]he first exception was already addressed in the separate motion for a <u>Franks</u> hearing and will not be repeated here."  That exception is "when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge."

On February 24, 2014, Bruce Conant filed objections to the R&R (77) (document number 80) and Rendy Conant filed objections to the R&R (78) (document number 81).  On February 24, 2012, Rendy Conant filed supplemental objections to the R&R (78)

(document number 82).  Finally, on March 3, 2014, I entered a one-paragraph order denying Rendy Conant's motion to supplement the motion for Franks hearing with a transcript (75) in part because defendant had still not satisfied her burden of showing the police acted intentionally or recklessly (document number 83).

On March 11, 2014, Judge Kays entered an order recommitting the case to me for further clarification of two issues (document number 84).

As a threshold matter, the Court notes that this case's unique procedural posture strongly influences the Court's decision to request clarification.  Although neither the defendants nor the Magistrate Judge were aware of the alleged omissions or false statements prior to the evidentiary hearing, the legal arguments now advanced in many of Defendants' objections should have been raised before the Magistrate Judge.  Following the evidentiary hearing, Defendants could have requested leave to file further briefing in light of Officer Weir's testimony, but they failed to do so.  Because of Defendants' failure to brief these issues, the Magistrate Judge was in the unenviable position of having to assimilate Defendants' prior suppression arguments to the newly learned facts from the hearing.  With that in mind, the Court addresses two of Defendants' objections which are relevant for the current discussion.

First, Defendants assert that even though the Magistrate Judge considered Officer Weir's testimony in the majority of his analysis, he did not apply the testimony when analyzing the applicability of an exception to the Leon "good faith" rule.  Specifically, Defendants contend that the Magistrate Judge failed to consider whether, in light of Officer Weir's testimony, "the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge."  See United States v. Cannon, 703 F.3d 407, 412 (8th Cir. 2013) (internal quotation marks and citations omitted) (noting that this is one exception to the good faith rule in Leon).

In his thorough and well-reasoned opinion, the
Magistrate Judge addressed whether the Leon "good faith"
rule should prevent suppression of the evidence seized from
Defendants' residence.  As a part of his analysis, the
Magistrate Judge discussed four exceptions to the "good
faith" rule.  See Docs. 78 at 17-23, 77 at 17-23.  The
analysis on three of the exceptions clearly discusses the
new evidence raised during the evidentiary hearing, but the
analysis of the first exception cross-references a prior
order denying a Franks Hearing (Doc. 73 at 10-14).  Because
the Franks Hearing order occurred prior to the evidentiary
hearing, the order did not discuss the new facts about the
potential omissions and/or alleged false statements.  Given
the unique procedural posture of the case, the lack of
adversarial briefing at this stage, and the fact that the
Magistrate Judge is well-acquainted with facts of the case
and the credibility of the witnesses, the Court requests a
supplemental recommendation on applicability of the first
exception in light of Officer Weir's testimony.  Although
this new information may or may not alter the analysis,
further clarification from the Magistrate Judge will assist
the Court in completing its review.

Second, Defendants argue that under the Eighth
Circuit's opinion in United States v. Reinholz, 245 F.3d 765
(8th Cir. 2001), the search warrant for Defendants'
residence is invalid.  Defendants contend that Officer
Weir's testimony reveals that he included false statements
in his affidavit and omitted other relevant facts.
Defendants assert that once the Court excludes the false
statements and includes the relevant omitted facts as
required under Reinholz, the remaining content of the
affidavit is insufficient to supply probable cause.

Because the Reinholz remedy is essentially premised on
a Franks' violation, Defendants are actually objecting to
the Magistrate Judge's order on that issue (Doc. 73) rather
than his report on the suppression issues (Docs. 77 & 78).
As mentioned previously, the initial Franks order predated
the suppression hearing wherein Officer Weir disclosed that
CI did not have personal knowledge of the facts attested to
in the affidavit.  This new information suggests that
Officer Weir may have omitted material information or
potentially made false statements in the affidavit.  Since
the Franks' issue was briefed and decided before learning
this information, the Court requests a supplemental
recommendation from the Magistrate Judge analyzing
Defendants' Reinholz and Franks arguments in light of the
new evidence.  Given the Magistrate Judge's recent order
(Doc. 83), the Court doubts whether the new information will
ultimately change the analysis on this issue.  That said,

the Court would like a supplemental explanation on this issue prior to completing its review.

## II. *LEON GOOD-FAITH EXCEPTION TO EXCLUSIONARY RULE*

To begin, I will set forth the body of the affidavit in support of the search warrant for defendants' residence:

> On 7/15/12 CI 2011-12-2 who has proven reliable in the past on six separate occasions, gave me information that Methamphetamine is being distributed from and stored at this location. CI 2011-12-2 told me that James Rhodenizer who lives at 723 East Main Street in Richland, purchases quantities of Crystal Methamphetamine from Bruce and Rendy Conant who reside and own the property at this address and is in Pulaski County, MO. It is further stored in a storage unit located off the 140 mile marker of I-44 in Laclede County. A search warrant was executed in Pulaski County and in the city of Richland on 6/23/12 and the CI advised me that the crystal methamphetamine found in Mr. Rhodenizer's possession was purchased from Bruce and Rendy Conant by James Rhodenizer. CI 2011-12-2 stated that there is enough on hand for sales; however the bulk is stored at the storage shed in Laclede County. CI 2011-12-2 further stated that on or about 07/12/12 the Conant's [sic] brought a new supply of methamphetamine to the area.

The focus of the defendants' motions is on the fact that the "information" provided by the CI appears by this affidavit to be based on first-hand knowledge but in reality it was not. The reliability of that information is a second issue stemming from the first; however, the primary concern at least in my mind is the fact that this affidavit states that the informant provided "information," not merely his or her "belief" of certain facts which led to the issuance of the search warrant.

It is undisputed that nothing was provided to Judge Storie outside this affidavit and therefore the basis of any of the material in the affidavit was not explained. When a word is not defined by statute, the court normally construes it in accord

with its ordinary or natural meaning.  Smith v. United States,
508 U.S. 223, 228 (1993).  The American Heritage Dictionary
defines "information" as "knowledge of facts learned" or
"communication of knowledge".  The Merriam-Webster Collegiate
Dictionary defines "information" as "knowledge that you get about
someone or something:  facts or details about a subject."  The
ordinary meaning of "information" is not the same as a belief,
which is defined by Merriam-Webster Collegiate Dictionary as "a
feeling of being sure that . . . something is true."  "Belief" is
defined by the American Heritage Dictionary as "mental acceptance
of and conviction in the truth, actuality, or validity of
something".  It is undisputed that the affidavit provided to
Judge Storie states that the CI provided "information" not that
the CI had a feeling that certain facts were true.

     When the defendants' motion for Franks hearing was ruled,
only the motions, response and replies were before the court.  In
the government's response, the following was stated:

        A confidential source (CI 2011-12-2) provided information to
        Officer Victor Weir that James Rhodenizer who resided at
        7234 East Main Street, Richland, Missouri, was distributing
        methamphetamine. . . .  Subsequent to this search on July
        15, 2012, CI 2011-12-2 gave additional information to
        Officer Weir regarding the defendants.  CI 2011-12-2
        disclosed to officer Weir that Mr. Rhodenizer purchased
        methamphetamine from the defendants.  CI 2011-12-2 further
        stated that the methamphetamine found on June 28, 2012, at
        Mr. Rhodenizer's residence was purchased from the
        defendants.  CI 2011-12-2 told Officer Weir that the
        defendants stored methamphetamine not only in their home but
        also in a storage unit located off of the 140 mile marker of
        I-44 in Laclede County.  CI 2011-12-2 also stated that the
        defendants had brought in a new supply of methamphetamine on
        July 12, 2012.

\* \* \* \* \*

> . . . There is no evidence to indicate that the CI-2011-12-2 was unreliable.

\* \* \* \* \*

> In United States v. Clay, the Eighth Circuit enumerated three relevant factors which may support an executing officer's objective reasonableness. . . . [D]id the executing officer interview or question the informant in person. The officer interviewing the informant in person is a circumstance that further supports the officer's good-faith reliance on the warrant because the officer has a greater opportunity to assess the informant's credibility. . . . "There is an inherent indici[um] of reliability in the richness and detail of a first-hand observation," that is not available to the reviewing judge. Kattaria, 553 F.3d at 1178.

\* \* \* \* \*

> . . . Officer Weir did personally interview CS 2011-12-2. Officer Weir states in his affidavit that CI 2011-12-2 gave "me" information.

(see government's response, document number 55).

With this background, I can say that I was surprised to hear, during the suppression hearing, the testimony of Officer Weir with regard to the source of the information provided by CI 2011-12-2.

Q. Now, you went through your experiences when dealing with informants when you were being questioned by Ms. Miller. Let me ask you this: When you use unnamed confidential informants, do you disclose in the information to the judge whether -- when those people have personal knowledge of what they're telling you and you know they have personal knowledge?

A. Not sure I understand.

Q. Knowledge that does not come from someone else.

A. Are you asking if the information I provide is what the informant tells me?

Q. What I'm asking you is, do you determine whether or not the information that unnamed informants give you is information that they themselves know from having been somewhere and seen something as opposed to having heard it from a third party?

A. Yes.

Q. Okay. And when you make those -- that determination, you put that in your affidavit; is that correct?

A. No.

(Tr. at 28-29).

Q. You had no information to place in the affidavit that the statements given to you with reference to this first affidavit were, in fact, something seen, heard or within the first personal knowledge of the CI, did you?

A. I think I understand the question. I think it's going to be no.

(Tr. at 31).

Q. Okay. So there's nothing -- so we'll be clear, there's nothing within the affidavit that the judge got that told him where it was that the confidential informant got whatever it was he was telling you?

A. No.

THE COURT: Wait a minute. You said no. Does that mean you're agreeing with what Mr. Cooley is saying here or disagreeing with it?

THE WITNESS: I'm not sure I understand the question.

THE COURT: His question was there's nothing in your affidavit for the first warrant that was executed on the residence to reflect that the CI who gave you that information had personal direct knowledge of it. By that I mean he saw it, he tasted it, he smelled it, he felt it or some personal experience that he had. And your response to that was that he didn't have any and you didn't include it in your affidavit, as I understand what you said.

Q. (By Mr. Cooley) Is that correct?

A. That's correct.

Q. Okay. Well, did you have knowledge of the reliability of
   his source of information?

A. Yes.

Q. Did you present that to the judge?

A. No.

(Tr. at 32).

Q. Okay. So with reference to -- you have in here -- in this
   affidavit you say that this CI -- the same CI that didn't
   have personal knowledge of this other -- told you that
   Rhodenizer lives in Richland and purchases quantities of
   crystal methamphetamine from Bruce and Rendy Conant. You
   didn't have anything in your affidavit that he knew this of
   personal knowledge either, did you?

A. No. I didn't have anything in there that said personal
   knowledge, no.

Q. Okay. Did you have anything in here that attested to the
   reliability of the source of the information that the
   confidential informant would have been relying upon to give
   you that statement?

A. No.

Q. Okay. But the judge was not made aware of the fact that it
   was anything other than impliedly the personal knowledge of
   the confidential informant, was he?

A. Implied personal knowledge?

Q. Yeah. You certainly didn't tell the judge that -- that the
   -- there was a source other than -- that the confidential
   informant was getting it from?

A. No, I didn't.

Q. Okay. So the judge would have had no way to assess the
   reliability of the source of information the confidential
   informant was stating, would he?

A. No.

(Tr. at 37-38).

Q. Okay. Then the next part of this affidavit for this home
   was that -- that you had executed a search warrant in

11

Pulaski County on 6/28/12.  And that would have been the
Rhodenizer search, would that be right?

A.    Yes.

Q.    And that you had -- and a CI advised you that stuff that was
      in that home was purchased from Bruce and Rendy Conant by
      Mr. Rhodenizer?  You put that in this affidavit; is that
      correct?

A.    Yes.

Q.    Once again, though, not being within the personal knowledge
      of the CI, you didn't put in there anything about the
      reliability of the source the CI would have gotten that
      information from, did you?

A.    In the document, no.

Q.    Okay.  The prosecutor knew that and he still told you to go
      ahead and sign it this way?

A.    Yes.

(Tr. at 39).

Q.    Then on the last thing you used in here you said that the CI
      further stated that on or about July 12, 2012, Conants
      brought a supply of methamphetamine to the area.  Once
      again, you don't place personal knowledge within the
      informant himself or herself, do you?

A.    No, I don't.

Q.    But you don't suggest to the Court that it is not their
      personal knowledge, nor do you put in the affidavit anything
      relating to the reliability of the source that the informant
      relied upon, do you?

A.    No.

(Tr. at 39-40).

Q.    Did you ask the informant 2011-12-2 whether or not she'd
      seen or he had seen -- whatever it's a he or she --
      personally any of the transactions or how that knowledge was
      derived?

A.    Yes.

Q.    And they had -- and what did she say or he say?

A.   What I was told by the informant was that some of the
     product was brought back and that it was all —— it was ——
     how to word it —— the informant had used the product with
     the other source and that it had come from the Conants.

Q.   But I'm talking about the information in the search warrant
     itself.  You didn't put that in the affidavit?

A.   No.

(Tr. at 44-45).

q.   And it says that this person gave you information that
     methamphetamine is being distributed from and stored at this
     location, correct?

A.   Yes.

Q.   Okay.  Did they tell you how they got that information; that
     they had seen it at the Conants' house, they'd seen anything
     like that?  Did they tell you that?

A.   Yes, the informant did tell me how they came by the
     knowledge.

Q.   That they had seen it there?

A.   No.

Q.   How did they tell you they derived the knowledge?

A.   From another party that had seen it there.

Q.   So we're talking about secondhand information that they had
     told —— somebody had told them and they told you —— is that
     correct?

A.   Yes.

(Tr. at 45-46).

        The question is not whether the affidavit is misleading ——

because in my opinion there is little doubt that it is.

Considering the ordinary meaning of the word "information" as it

is used in the affidavit, one would read the affidavit and assume

that CI 2011-12-2 had first-hand knowledge of the material he[2] relayed to Officer Weir.  Otherwise, what would be the point of discussing the CI's past reliability?  Furthermore, I cannot imagine that an issuing judge would not ask from where the information came if he had any inkling that it came from someone not mentioned in the affidavit.

In United States v. Chambers, 987 F.2d 1331, 1334-1335 (8th Cir. 1993), the court rejected a defendant's argument that the issuing judge was misled by information in an affidavit that did not disclose that the informant and a probationer who had been arrested was the same person:

> Regarding the exceptions to the Leon good-faith exception, Chambers first argues that Detective Wessler deliberately and/or recklessly misled Judge Baker into issuing the search warrant.  Specifically, Chambers contends that Detective Wessler deliberately attempted to conceal the fact that the probationer (the person in the car who was stopped by the police on November 17, 1988, and who had lied to the police about his true identity) was the same person as the informant (the person who talked to Detective Wessler on November 17, 1988, at the police station and provided the basis for the search warrant application).  Furthermore, Chambers states that Detective Wessler omitted from the search warrant application the facts that he had no knowledge of the informant's character for truthfulness, that he made no attempt to verify the truth of the informant's statements, and that the police did not find any drugs or firearms on the informant when they stopped the car on November 17, 1988.
>
> The district court found that although the affidavit failed to state a clear connection between the probationer and the informant this inference could be reasonably drawn. Our review of the affidavit convinces us that this finding is not clearly erroneous.  Additionally, the affidavit provides adequate information regarding the questionable

___

[2]It is my usual practice to refer to confidential informants as "he" for ease of reading.

background of the informant.  For example, Detective Wessler
specifically stated that the probationer had lied about his
true identity and that he was wanted on numerous warrants.
Chambers also admits that Judge Baker questioned Detective
Wessler about the informant and that Detective Wessler told
Judge Baker that he had no prior dealings with the
informant.  Based on our reading of the affidavit, we hold
that the district court's finding that Detective Wessler did
not deliberately and/or recklessly mislead the issuing judge
is not clearly erroneous.

The facts in <u>Chambers</u> are distinguishable from the facts in
this case.  In <u>Chambers</u> the judge was actually informed of the
information omitted from the affidavit.  Such is not the case
here.  Judge Storie did not know that CI 2011-12-2 had no first-
hand knowledge of the information he reported to Officer Weir, he
had no knowledge of the fact that this CI had hopes of favorable
treatment in a criminal case in exchange for information, and he
had no knowledge of the fact that the CI obtained this
information while using drugs with the informant who actually had
first-hand knowledge of the information that eventually landed in
the affidavit (Tr. at 45).  I have little doubt that the
affidavit was misleading to Judge Storie -- it certainly was to
me.

However, the analysis of whether the exclusionary rule
applies in this case goes deeper.  The Supreme Court opinion
which created the good-faith exception to the exclusionary rule
points out the purpose of the exclusionary rule:  It "operates as
'a judicially created remedy designed to safeguard Fourth
Amendment rights generally through its deterrent effect, rather
than a personal constitutional right of the party aggrieved.'"

United States v. Leon, 468 U.S. 897, 906 (1984).

Because a search warrant "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime,'" United States v. Leon, 468 U.S. at 913–914 (quoting United States v. Chadwick, 433 U.S. 1, 9 (1977) (quoting Johnson v. United States, 333 U.S. 10, 14 (1948))), the Supreme Court has expressed a strong preference for warrants and declared that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." United States v. Leon, 468 U.S. at 914, citing United States v. Ventresca, 380 U.S. 102, 106 (1965). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. at 914. Deference to the magistrate, however, is not boundless. "It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." Id. citing Franks v. Delaware, 438 U.S. 154 (1978).

In Franks v. Delaware, the Supreme Court was presented with the question of whether a defendant may ever challenge the veracity of a sworn statement used by police to procure a search

warrant.  In rejecting Delaware's position that a sworn statement could never be challenged, the Supreme Court noted that "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning.  The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile."  <u>Franks v. Delaware</u>, 438 U.S. at 168.

The Supreme Court described the new procedure as follows:

In sum, and to repeat with some embellishment what we stated at the beginning of this opinion:  There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

<u>Id</u>. at 171–172.

Because in this case there was a motion for a _Franks_ hearing and a motion to suppress evidence, for which an evidentiary hearing was necessary, the court is faced with a circular analysis.  Defendants' motion for a _Franks_ hearing was denied because they failed to establish a deliberate falsehood or of reckless disregard for the truth.  However, because a hearing was held on another matter, evidence of what could be considered a deliberate falsehood or of reckless disregard for the truth is in the record.  Therefore, the court looks to _Leon_ to determine whether a good-faith exception to the exclusionary rule applies and is directed back to _Franks_.

I have not been presented with a case where there appears to be a reckless disregard for the truth but not solely by the officer preparing the affidavit.  The troubling part of this case is that the officer did not act on his own in keeping this information from Judge Storie.  He testified that the prosecutor who reviewed the affidavit knew that CI 2011-12-2 did not have first-hand knowledge of the information.  The prosecutor knew that CI 2011-12-2 was attempting to "work off" a criminal case. Yet the prosecutor did not instruct Officer Weir to include any of this information in the affidavit.  And Officer Weir did not include any of this information, even though he realized this would leave the judge with no basis to evaluate the credibility of the informant.

According to the undisputed evidence, Officer Weir obviously relied on the advice of the prosecuting attorney.  However, the

logic of this approach is astonishing to me. If an officer could swear out an affidavit which stated that a CI told the officer that certain individuals had drugs in their house, and get a search warrant on that basis, what would stop an officer from being the very one to give this information to an informant who would then give it right back to the officer as a basis for a search warrant? Such a procedure could be used by police to obtain search warrants based on nothing but mere suspicion or, worse, their own desire to harass someone about which the officer has no credible incriminating information.

Without any guidance from controlling case law, however, on how the advice of a prosecutor[3] who chooses to keep information from a reviewing judge affects the <u>Leon/Franks</u> analysis, I turn back to those Supreme Court opinions. The Court in <u>Franks</u> stated that, "Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." Although the Court only addressed the reckless disregard of the "affiant," the fact that the affiant was singled out is important. And I note again that the exclusionary rule is designed to deter <u>police</u> misconduct.

With that in mind, and considering the following factors, I continue to find that the defendants have failed to establish a

---

[3]I note that the state prosecutor was not a witness in this case and was not present to challenge the testimony of Officer Weir in regard to the prosecutor's role in all of this. However, I am limited by the evidence that was presented before me.

deliberate falsity or a reckless disregard for the truth and
instead have established that Officer Weir acted negligently.[4]
Officer Weir testified that he did not include information about
the informant who had first-hand information due to a potential
threat of danger to that informant (Tr. at 22-23), the prosecutor
knew that the information had come from another informant but did
not direct Officer Weir to include that in the affidavit[5] (Tr. at
16-18), and Officer Weir actually talked to the informant who had
first-hand knowledge and this occurred a few days before the
warrant was executed at Rhodenizer's home during which drugs were
seized from there (Tr. at 49-50). When assessing the good faith
of Officer Weir, the court must look at the totality of the

---

[4]Because this has been strongly pointed out, any subsequent
omission of the real source of information in an affidavit by the
players in this case would, at least by me, be looked upon as
evidence of deliberation.

[5]

Q.  Did you tell the prosecuting attorney that when you had him
    go over -- when he went over this and signed this document?

A.  That there was an outside source?

Q.  Yeah.

A.  Yes.

Q.  And the prosecuting attorney went ahead and approved this
    and told you to present this to the judge in spite of the
    fact that the information, if it was firsthand even from the
    outside source, was somebody other than the confidential
    informant? He said just go ahead and file it that way; is
    that correct?

A.  Yes.

(Tr. at 38-39).

circumstances including what Officer Weir knew but did not include in his affidavit.  United States v. Chambers, 987 F.2d at 1335; United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

For these reasons, I continue to find that regardless of the outcome of any probable cause analysis,[6] the good-faith exception to the exclusionary rule applies in this case.

### III. *REINHOLZ ANALYSIS*

In United States v. Reinholz, 245 F.3d 765 (8th Cir. 2001), police had requested pharmacies to report when people purchased iodine crystals, an ingredient used in the manufacture of methamphetamine.  A pharmacist called police and reported that Rehinholz had ordered iodine crystals allegedly for cleaning tools.  The pharmacist, who initially asked to remain anonymous, stated that he thought Reinholz was manufacturing, distributing, and using methamphetamine because the pharmacist knew of no legitimate use for iodine crystals.[7]  When police eventually sought a search warrant for Reinholz's home, they referred to the statement by the pharmacist (whose identity by then was known) as follows:  "[Y]our Affiant Officer received information from a

_____

[6]Reviewing courts can properly analyze the issue of the Leon good-faith exception to the exclusionary rule before reviewing the issue of probable cause.  United States v. Leon, 468 U.S. at 925; United States v. Chambers, 987 F.2d at 1334.

[7]Iodine crystals may also be used by farriers, farmers, and veterinarians to treat infections in horses' hooves, as an ingredient for producing germicides, fungicides, antiseptic, as a disinfectant, and in animal feeds.  United States v. Reinholz, 245 F.3d at 770 n.2.

confidential and reliable source that a party REINHOLZ, Eric B.,
is involved in the use of methamphetamine." The district court
granted the motion to suppress because the officer had recklessly
provided false information, i.e., that his source was "reliable,"
when in fact he had no information at all about whether the
source was reliable. The district judge then removed that
section from the affidavit and found it lacking in probable
cause. The court of appeals agreed.

> The district court did not err when it determined that
> Officer Podany recklessly misled the issuing judge by
> misrepresenting the nature of his source. Officer Podany's
> claim to have received information from a "confidential and
> reliable" source recklessly misrepresented the nature of his
> source by implying that his informer had personal knowledge
> of Reinholz's methamphetamine use and distribution. Officer
> Podany knew that the sole basis for the pharmacist's opinion
> concerning Reinholz's methamphetamine use was Reinholz's
> purchase of iodine crystals. Officer Podany's
> "confidential" characterization was misleading because the
> pharmacist dropped his request for anonymity by the time
> Officer Podany filed his affidavit. Officer Podany's
> reliability claim was misleading because it implied that his
> source had knowledge of Reinholz's drug activities and that
> independent police investigation corroborated the
> informant's declarations. In fact, police investigation
> merely corroborated the pharmacist's description of
> Reinholz's automobile and license plate. Contrary to
> Officer Podany's statement, the pharmacist was not a
> confidential source and his reliability was not related to
> any personal knowledge of or corroborated information
> concerning Reinholz's methamphetamine use. Therefore, the
> district court did not err when it determined that Officer
> Podany recklessly misled the issuing judge by
> misrepresenting the nature of his source.

Id. at 774.

The issue in Reinholz was, based on the facts as described
above, the proper probable cause analysis used, i.e., did the
court properly delete the paragraph referring to the pharmacist

as a reliable source of information as to Reinholz's drug use, or should the court have supplemented the paragraph with the explanatory information.  The court held that the correct analysis was to delete the misleading information.

> We recognize that the exclusionary rule does not apply to negligent misrepresentations or omissions.  In any case, retroactively supplementing the affidavit with material omissions bolstering probable cause would undermine the deterrent purpose of the exclusionary rule.  Therefore, the district court did not err when it refused to supplement the affidavit with more precise information concerning the nature of Officer Podany's source.

Id. at 775.

The difference between Reinholz and this case is that there is no evidence that Officer Podany acted on the advice of a prosecuting attorney when he misrepresented the source of his information regarding Reinholz's drug use.  Here, as discussed at length above, Officer Weir testified that his decision to omit reference to the second confidential informant was based in part on considerations of safety to an informant and he relied on the direction of the prosecuting attorney in keeping that information out of the affidavit.  Therefore, I find that the court's discussion in Reinholz regarding whether Officer Podany acted deliberately or recklessly is not controlling in this case due to that major difference.

## IV. CONCLUSION

Based on all of the above, I find that defendants have failed to establish that Officer Weir's affidavit contained a deliberate falsehood or that he acted in reckless disregard for

the truth in failing to disclose that CI 2011-12-2 did not have first-hand knowledge of the information provided, that he was attempting to "work off" a criminal case, and that he heard this information from another informant while the two used drugs together. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendants' motions to suppress evidence.

Counsel are advised that each has 14 days from the date of this report and recommendation to file and serve specific objections. **Counsel are specifically invited to submit to the court in their objections any case law discussing the effect of an officer's relying on the advice of a prosecutor in the analysis of whether the omission or false information was deliberately or recklessly provided.**

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 20, 2014